IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JUSTIN LOUGH, | : | Civil No. 3:19-cv-1697 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| COUNTY OF COLUMBIA, *et al.*, | : | |
| Defendants | : | |

**MEMORANDUM**

## I. Background

Plaintiff Justin Lough ("Lough"), an inmate who was housed at all relevant times at the Columbia County Prison, in Bloomsburg, Pennsylvania, initiated this action pursuant to 42 U.S.C. § 1983.[1] (Doc. 1). Named as Defendants are Columbia County, Warden Varano, Deputy Warden Nye, former Deputy Warden Meyer, and Lieutenant Setzer. (*Id.*). Presently pending before the Court is Defendants' motion (Doc. 14) to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Court will grant the motion.

## II. Allegations of the Complaint

In May 2017, Lough was housed as a federal pretrial detainee at the Columbia County Prison. (Doc. 1 ¶¶ 3, 14). Lough asserts that he filed several grievances relating to

---

[1] Lough is currently confined at the Clinton County Correctional Facility, in McElhattan, Pennsylvania. (*See* Doc. 24).

a host of alleged problems at the Columbia County Prison. In these grievances, Lough complained about the presence of black mold and bugs in the showers, overcrowding in prison cells, the Prison's policy of housing federal, state, and county inmates in the same population, delays in receipt of medical care, the destruction of his personal property stored in his cell, placing mentally ill inmates in the general prison population, a Prison policy requiring non-indigent inmates to pay for postage for legal mail, and failing to accommodate the religious needs of Jewish and Muslim inmates. (*Id.* at ¶¶ 17-43).

Based on the allegations of the complaint, only three of these problems relate to Lough personally. First, Lough alleges that he suffered from migraines due to the need for new eyeglasses, and he requested to see a dentist for severe tooth pain and was placed on a four to five month waiting list. (*Id.* at ¶ 27). Second, Lough alleges that the "C.E.R.T. Team" searched his cell, threw away his toothbrush and toothpaste, and destroyed legal papers and religious material. (*Id.* at ¶ 29). Third, Lough asserts that the grievance system at the Columbia County Prison is inadequate because it lacks a level of appeal higher than the Warden. (*Id.* at ¶ 15).

## III. Legal Standard

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

## IV. Discussion

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials. *See* 42 U.S.C. § 1983. The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

*Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must

show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, § 1983 limits liability to persons who violate constitutional rights.

### A. Lough Lacks Standing to Sue on Behalf of Other Inmates

Lough sets forth numerous complaints on behalf of other inmates at the Columbia County Prison. However, Lough lacks standing to sue on behalf of any other inmate. *See Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) (holding that prisoners do not have standing to sue on behalf of their fellow inmates); *see also Allen v. Eckard*, 804 F. App'x 123, 127 (3d Cir. 2020) (inmate lacked standing to set forth claim that other inmates were assaulted); *Vaughn v. Cambria County Prison*, 709 F. App'x 152, 155 (3d Cir. 2017) (inmate lacked standing to raise constitutional claims on behalf of other inmates). Thus, to the extent that Lough is seeking to raise any claims on behalf of his fellow inmates, he lacks standing to do so. In this regard, "a plaintiff must 'assert his or her own legal interests rather than those of a third party' [to have standing to bring a claim]." *Twp. of Lyndhurst, N.J. v. Priceline.com, Inc.*, 657 F.3d 148, 154 (3d Cir. 2001) (citation omitted). The Court will dismiss any claims based on conduct not directed toward Lough.

### B. Lack of Personal Involvement of Defendants Varano, Nye, and Meyer

Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005)

(quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; Rode, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

It appears that Lough seeks to hold Defendants Varano, Nye, and Meyer liable based solely upon their responses to his various complaints and grievances. (Doc. 1 ¶¶ 15, 17-29, 31, 32). However, the "failure of a prison official to provide a favorable response to an inmate grievance is not a federal constitutional violation." *Flanagan v. Shively*, 783 F. Supp. 922, 931-32 (M.D. Pa. 1992), *aff'd*, 980 F.2d 722 (3d Cir. 1992). Thus, insofar as Lough's claims against these Defendants are premised on their alleged inadequate responses to inmate complaints and grievances, dissatisfaction with responses to an inmate's grievances does not support a constitutional claim. *See Brooks v. Beard*, 167 F. App'x. 923, 925 (3d Cir. 2006) (holding that allegations that prison officials responded inappropriately to an inmate's later-filed grievances do not establish the involvement of

those officials and administrators in the underlying constitutional deprivation); *Alexander v. Gennarini*, 144 F. App'x 924 (3d Cir. 2005) (concluding that involvement in the post-incident grievance process is not a basis for liability); *Hoover v. Watson*, 886 F.Supp. 410, 418-419 (D. Del.), *aff'd* 74 F.3d 1226 (3d Cir.1995) ("'[i]f the state elects to provide a grievance mechanism, violations of its procedures do not . . . give rise to a 1983 claim.'") (citation omitted).

It also appears that Lough attempts to assert claims against Defendants Varano, Nye, and Meyer based upon their respective supervisory positions. Supervisors, however, "may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior." *Iqbal*, 556 U.S. at 676. Accordingly, to the extent that Lough's claims against these Defendants rely on a *respondeat superior* theory of liability, Defendants Varano, Nye, and Meyer are entitled to dismissal on this ground.

### C. Eighth Amendment Claim[2]

Lough alleges that his constitutional rights were violated when prison medical staff made him wait to receive dental and vision care.[3] (Doc. 1 ¶¶ 27, 28).

In order to establish an Eighth Amendment medical claim, a plaintiff "must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)). A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the necessity for a doctor's attention." *Monmouth Cty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (citation omitted). A prison official acts with

---

[2] It is well established that claims of inadequate medical care by pretrial detainees are "evaluate[d] . . . under the Due Process clause of the Fourteenth Amendment, which prohibits the defendants from undertaking acts that amount to punishment." *Thrower v. Alvies*, 425 F. App'x 102, 104 (3d Cir.2011) (citing *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir.2005)). The United States Court of Appeals for the Third Circuit has held that the "Due Process Clause provides pretrial detainees with at least as much protection as is afforded to prisoners raising denial-of-medical-treatment claims under the Eighth Amendment." *Id.* at 105 (citing *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581-82 (3d Cir. 2003)). Thus, courts apply the Eighth Amendment standard to determine whether a pre-trial detainee's rights were violated. *See Lenhart v. Pennsylvania*, 528 F. App'x 111, 115 (3d Cir. 2013) ("[A] pretrial detainee is not entitled to Eighth Amendment protections, but nevertheless a pretrial detainee's claim of inadequate medical care is evaluated under the same standard as a convicted prisoner's Eighth Amendment claim of inadequate medical care[.]") (citing *Natale*, 318 F.3d at 581).

[3] Lough does not allege that any of the named Defendants were involved in his medical care at the Columbia County Prison. (Doc. 1 ¶¶ 27, 28).

deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. *See Farmer v. Carlson*, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988); *see also McCracken v. Jones*, 562 F.2d 22, 24 (10th Cir. 1977); *Smart v. Villar*, 547 F.2d 112, 113 (10th Cir. 1976), *cert. denied*, 450 U.S. 1041 (1981).

In the complaint, Lough alleges that he had severe pain in his tooth and suffered from migraines while reading because he needed a new pair of eyeglasses. (Doc. 1 ¶ 27). Assuming *arguendo* that Lough's tooth pain and migraines rise to the level of a serious medical condition for purposes of the Eighth Amendment analysis, the Court must determine whether Lough has pled a deliberate indifference to that need. Lough failed to allege that any of the Defendants acted with deliberate indifference to his medical needs.

None of the named Defendants are medical professionals, and therefore cannot be considered deliberately indifferent simply because they "failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (affirming that as a matter of law, non-physician prison officials could not be considered deliberately indifferent for this reason);

*see also Smith v. O'Boyle*, 251 F. App'x 87, 89 (3d Cir. 2007) (affirming dismissal of § 1983 claim against prison officials because "[p]rison officials who are not physicians are entitled to defer to the medical judgment of staff physicians"). Absent a "belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner," the Defendants, as non-physicians, cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference. *Innis v. Wilson*, 334 F. App'x 454, 456-57 (3d Cir. 2009) (affirming dismissal of prisoner's deliberate indifference claim against non-medical prison officials). Lough failed to allege this belief or actual knowledge. Therefore, the Court will dismiss Lough's Eighth Amendment medical care claim.

### C. Fourteenth Amendment Claim

Lough alleges that his rights were violated when the "C.E.R.T. Team" destroyed some of his personal property during a cell search.[4] (Doc. 1 ¶ 29).

The Due Process Clause of the Fourteenth Amendment guarantees that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV. Ordinarily, the concept of "due process" requires some type of hearing before the state can deprive a person of a protected interest. *Zinermon v. Burch*, 494 U.S. 113, 126 (1990) (collecting cases). However, in cases of random and unauthorized deprivations of property the State cannot predict when the loss will occur and, therefore, is

---

4 Lough does not assert that any of the named Defendants were involved in the cell search or confiscation and destruction of his property. (Doc. 1 ¶ 29).

unable to provide a meaningful hearing before the deprivation takes place. The Supreme Court determined that, with respect to negligent, random and unauthorized acts by state actors that result in the loss of a protected interest, a plaintiff does not suffer a violation of procedural due process if he or she has an adequate post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527 (1981). The Supreme Court subsequently extended the rule in *Parratt* to apply to intentional acts by state actors. *Hudson v. Palmer*, 468 U.S. 517 (1984); *see also Barr v. Knauer*, 321 F. App'x 101, 103 (3d Cir. 2009).

The Third Circuit Court of Appeals has held that the DOC's grievance procedure provides an adequate post-deprivation remedy, *see, e.g.*, *Tillman v. Lebanon County Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000), and that the existence of this post-deprivation remedy forecloses any due process claim, *Austin v. Lehman*, 893 F. Supp. 448, 454 (E.D. Pa. 1995), even if an inmate is dissatisfied with the result of the process. *Iseley v. Horn*, 1996 WL 510090, at * 6 (E.D. Pa. 1996). "As [the inmate plaintiff] admits to having used the grievance procedure to attempt the return of his [property], he had access to an adequate post-deprivation remedy and even if there had been a violation of his liberty interest he was not denied the right to due process of law." *Brooks v. DiGuglielmo*, 2008 WL 5187529, * 6 (E.D. Pa. 2008) (footnote omitted). *See also Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir. 2008) (stating, "[b]ecause prisons are constitutionally required to afford inmates only a post-deprivation remedy, we agree that the defendants' failure to give the inmates prior notice of their intended seizure of their materials did not violate the plaintiffs' Due Process rights").

*Monroe* dealt with the intentional confiscation of inmate property pursuant to official prison policy. *Monroe*, 536 F.3d 198. In *Monroe*, the inmates objected to a Department of Corrections policy that allowed the confiscation of UCC-related material and forms. *Id.* The Third Circuit held that the failure to give the inmates prior notice of the seizure of these materials did not violate their due process rights. *Id.* It also found that the Department afforded the inmates a meaningful post-deprivation remedy in the form of the inmate grievance system and a special process for objecting to the seizures. *Id.* The Court stated: "Although the plaintiffs allege that the defendants have not adhered to their own procedure, they have not shown that this post-deprivation procedure was not meaningful." *Id.* at 210.

Similarly, in this case, the prison officials were not obligated to give Lough prior notice of the seizure of his belongings. Lough alleges that the C.E.R.T. team searched his cell and "threw away [his] toothbrush and toothpaste," as well as "random legal documents/work" and religious material. (Doc. 1 ¶ 29). Even if the prison officials' actions were not justified, Lough was provided with a meaningful post-deprivation remedy with regard to the confiscated material. He asserts that he availed himself of the remedy process by filing several grievances. (Doc. 1 ¶¶ 17-28, 44). Consequently, Lough's Fourteenth Amendment claim regarding his confiscated property fails as a matter of law. Defendants' motion to dismiss this claim will be granted.

### D. Inmates do not have a Constitutionally Protected Right to the Prison Grievance Procedure

Lough alleges that the grievance procedure at the Columbia County Prison is defective because there is no avenue to appeal beyond the Warden. (Doc. 1 ¶¶ 15, 44). However, "[i]nmates do not have a constitutionally protected right to the prison grievance process." *Burnside v. Moser*, 138 F. App'x 414, 415 (3d Cir. 2005) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). As such, Lough cannot maintain a constitutional claim based upon his perception that the grievance process at the Columbia County Prison is inadequate. The Court will dismiss this claim.

## V. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, Lough's claims against the Defendants are factually and legally flawed and thus incurable. Therefore, the Court concludes that curative amendment would be a futile endeavor.

## VI. Conclusion

The Court will grant Defendants' motion (Doc. 14) to dismiss. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: September 28, 2020